Opinion by
 

 Keller, P. J.,
 

 On April 3, 1923, the defendant, New York Life Insurance Company, issued its policy insuring the life of Joseph Specter, then thirty-seven years old, in the amount of $2500, for a semi-annual premium of $43.05, payable October 3 and April 3 of every year during the life of the insured. The beneficiary named in the policy was the insured’s wife, Gussie Specter.
 

 On October 3, 1930, the insured secured a loan or advance of $277 on the policy. He did not pay the semi-annual premium falling due on April 3, 1931 or any subsequent premiums. He died March 20, 1939.
 

 His widow, the beneficiary in the policy, brought this action claiming to recover $2223 ($2500 less $277) and interest thereon from the date of the insured’s death.
 

 The court below directed a verdict for the defendant. Plaintiff appealed. The judgment will be affirmed.
 

 
 *291
 
 The policy provided in section 4 that “After three full years’ premiums have been paid, the Insured may ...... within three months after any default in the payment of premiums, but not later, surrender the policy and (1) receive its Cash Surrender Value; or (2) receive the amount of non-participating paid-up insurance which the cash surrender value at date of default, less any indebtedness hereon, will purchase, payable at the same time and on the same conditions as this Policy.”
 

 It further provided, “(3) If the Policy be not surrendered for cash or for paid-up insurance within three months after default in payment of premiums, its
 
 cash surrender value at date of default, less the amount of any indebtedness,
 
 shall
 
 automatically purchase
 
 continued insurance from the date of default for the
 
 face of the Policy plus any dividend additions and less any indebtedness to the Company.
 
 The Continued Insurance shall be without future participation and without the right to loan, cash surrender value, disability or double indemnity benefits.” (Italics supplied).
 

 It also provided: “The Cash Surrender Value shall be the reserve on the face of the Policy at the end of the insurance year or, in event of default, at the date of default (omitting fractions of a dollar per thousand of insurance) and the reserve on any outstanding paid-up additions, plus any dividends standing to the credit of the Policy and less a surrender charge for the third to the ninth years, inclusive, of not more than one and one-half per cent of the face of the Policy. Such reserve will be computed
 
 on the basis of the American Table of Mortality’
 
 and
 
 interest at three per cent,
 
 and the
 
 amount of
 
 paid-up insurance under (2)
 
 and the term of the continued insurance under (S)
 
 will be computed on the
 
 same basis at the attained age of the Insured on the date of default.
 
 The values in the table opposite
 
 are computed in accordance with the above provisions,
 
 as
 
 *292
 
 suming that premiums have been paid in full when due for the number of years stated, that
 
 there is no indebtedness
 
 to the Company, no outstanding paid-up additions, and no dividends standing to the credit of the Policy; the surrender charge, if any, has been deducted.” (Italics supplied).
 

 The table referred to above set forth the Guaranteed Surrender Values as above calculated on the basis of each $1000 of the face of the policy, “assuming that premiums have been paid in full when due for the number of years stated and
 
 that there is no indebtedness to the company,
 
 no outstanding paid-up additions and no dividends standing to the credit of the Policy.” This insured had paid the premiums on the policy for eight full years, when default was made in the payment of premiums. His attained age was then forty-five years, and he then owed the Company $277 plus $8.28 interest. A dividend of $18.95 would be due him on April 3,1931, at the close of his insurance year. We will give the figures in the table applicable to the eighth year, the continued insurance being calculated on the basis of the insured’s age then being forty-five years.
 

 Table of Guaranteed Surrender Values
 

 As the face amount of this policy was $2500, the insured, if there had been no indebtedness against his policy, could have, within three months after April 3, have elected to take paid-up life insurance for two and one-half times $235 or $587.50, plus the dividend of 1931, elected (1) to surrender the policy for two and one-half times $118 or $295, plus the dividend for the year, $18.95, or a total of $313.95. Or (2) he could
 
 *293
 
 $18.95 in cash, or in such additional insurance as the dividend would buy, in the proportion of $587.50 to $295.
 

 But if there was any indebtedness to the company on his policy — as in this case there was — that amount plus the interest due on April 3, 1931 would have to be deducted, whichever option he elected, in arriving at the surrender values. Thus the cash surrender value (No. 1) would have been $313.95, less the indebtedness $285.28 ($277 plus $8.28), or $28.67. The paid-up insurance (No. 2) would be calculated on the same basis or ratio as stated in the table, viz., as much paid-up insurance as $28.67 would buy, in the proportion of $295 cash surrender value to $587.50 paid-up insurance.
 

 The insured made no election of either of these two surrender options. Accordingly, the automatic (3d) provision of the policy applied and the cash surrender value on the date of default, $313.95 ($295 plus $18.95), less the amount of his indebtedness, $285.28 ($277 plus $8.28), that is to say, $28.67, was applied ,by the company, as directed in the policy, to the purchase of continued insurance, at the attained age of the insured, forty-five, from April 3,1931 for $2234, (the face of the policy $2500, plus accrued dividend $18.95 or $2518.95, less the indebtedness $285.28, or $2233.67 ($2234 omitting fractions) for an extended term, which, it was testified by the defendant’s actuary, computed on the basis of the American Table of Mortality and interest at three per cent, would be one year and sixty-nine days from April 3, 1931, expiring June 11, 1932 — six years and nine months before the insured’s death — at which time the insurance lapsed and was no longer in force.
 

 To accept the appellant’s contention would allow the insured, who had borrowed nearly the full reserve or cash surrender value of the policy before defaulting in the payment of premiums, the same amount of continued insurance for the same extended term as if he were not
 
 *294
 
 indebted to the company at all, and would give him the use of the money loaned or advanced him up until the expiration of the continued term, without any interest or return to the company. It would not only be in the teeth of the provision of the policy
 
 that the amount used to purchase continued insurance shall be the cash surrender value at date of default, less the amount of indebtedness,
 
 but it would be in flat violation of the provisions of section 353 of the Insurance Company Law of 1921, as added by the amending Act of June 23, 1931, P. L. 904, p. 912, forbidding discrimination in the terms and conditions of policies, for it would discriminate grossly in favor of borrowing as against non-borrowing policyholders.
 

 There is no validity in the contention of appellant that, by the defendant company’s computation, the insured’s indebtedness has been taken off twice to his injury or detriment.
 

 The policy requires that where there has been a default in the payment of premiums, the insured’s indebtedness shall first be deducted from the cash surrender value, whether he elects (1) to take the latter in cash or (2) to purchase paid-up insurance, and provides that if he makes no election within three months after the default, the cash surrender value less the insured’s
 
 indebtedness
 
 shall automatically be applied to the purchase of continued or extended insurance, calculated as set forth in the table of surrender values at the insured’s attained age of forty-five years, not for the
 
 face
 
 of the policy, however, but for
 
 the face amount less the indebtedness;
 
 but this works for the benefit of the insured who is in default, for if the insurance is continued for the face of the policy, the extended term will be correspondingly shorter than if the insurance be continued for an amount equal to the difference between the face of the policy and the insured’s indebtedness. In other words, while the
 
 amount
 
 of the insur
 
 *295
 
 anee is slightly less, the
 
 term,
 
 of the insurance is correspondingly lengthened, to the benefit of a policyholder unable to keep up his payments.
 

 The verdict, directed by the court was in strict conformity with the provisions of the policy and is in accord with the rulings of the Supreme Court and this court in
 
 Toncich v. Home Life Ins. Co.,
 
 309 Pa. 336, 339, 163 A. 673;
 
 Stevernagel v. Metropolitan Life Ins. Co.,
 
 322 Pa. 289, 185 A. 208;
 
 Felderman v. Inter-Southern Life Ins. Co.,
 
 325 Pa. 389, 190 A. 723; and
 
 Horan v. Knights Life Ins. Co.,
 
 135 Pa. Superior Ct. 255, 5 A. 2d 404. In the last cited case the policy provided for extended insurance for the
 
 face
 
 of the policy, whereas if, like the present case, it had been for the face of the policy,
 
 less indebtedness,
 
 the term would have been extended for five months more and the plaintiff would have been entitled to recover.
 

 The loan agreement offered and received in evidence did not vary or contradict the terms of the policy, as in
 
 Murray v. Prudential Ins. Co.,
 
 144 Pa. Superior Ct. 178, 18 A. 2d 820. There the company endeavored to charge compound interest on the insured’s loan pursuant to the loan agreement, although the policy itself gave it no such authority.
 

 A trial court commits no error in applying to the facts in evidence the principles and laws of mathematics and directing a verdict where, so applied, they rule the case :
 
 Horen v. Davis, Director General,
 
 274 Pa. 244, 250, 118 A. 22.
 

 It is as plain as a pikestaff that a policy which required the insured to pay $43.05 every six months in order to keep it alive and in full force, would not be extended for the benefit of an insured in default, for nearly eight years by applying $28.67, the surrender value less the insured’s indebtedness to the company, to the purchase of continued insurance. The laws of mathematics applied to the provisions of the policy
 
 *296
 
 make it clear that if $295 (two and one-half times $118) will purchase $2500 of continued insurance for ten years and two hundred and sixty-seven days, $28.76 will buy $2500 continued insurance for a proportionate term, to wit, slightly less than
 
 one-tenth
 
 — about .0975 —of ten years and two hundred and sixty-seven days— or about one year and seven days — , and will purchase $2234, (the face of the policy less the indebtedness), of such continued insurance for a slightly longer term, (one year and sixty-nine days as calculated by the actuary), but by no means approaching the almost eight years needed to sustain this action.
 

 The assignments of error are overruled and the judgment is affirmed.